HARRY KAHN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MEYER STERN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 27826, 27827. Promulgated September 25, 1929.

*H. Earlton Hanes, Esq.,* for the petitioners.

*L. A. Luce, Esq.,* and *Francis Van Haaften, Esq.,* for the respondent.

500

502

OPINION.

ARUNDELL: In the return for 1922 the partnership deducted $26,-519.98 for bad debts. The amount of the deduction is the sum of specific bad debts charged off within the year, amounting to $24,-830.55, and the addition of $30,000 to the reserve for bad debts, less collections made during the year, amounting to $28,310.57, on accounts charged off as worthless in prior years. In the return for 1923 the partnership deducted $60,280.09 for bad debts. The amount of the deduction is the sum of specific bad debts charged off within the year, amounting to $37,894.72, and the addition of $40,000 to the reserve for bad debts, less collections made during the year, amounting to $17,614.63, on accounts charged off as worthless in prior years. The Commissioner disallowed so much of the deduction taken in each year as represented the addition to the reserve for bad debts, i. e., $30,000 for 1922, and $40,000 for 1923, and it is of this action which the petitioners complain.

The petitioners contend that the method of treating bad debts in the two years on appeal was consistent with the accounting practice uniformly followed since 1913, and, hence, involved no change which required the consent of the Commissioner; that the deductions claimed were reasonable in amount; and that the partnership is entitled, under the provisions of section 214(a) (7) of the Revenue Act of 1921, to deduct the amount added in each year to the reserve for bad debts. The Commissioner answers that the partnership is not entitled to deduct the amounts added in 1922 and 1923 to the reserve for bad debts, because (1) the partnership elected to deduct specific bad debt items in 1921, in lieu of a reasonable addition to the reserve, and such election is binding upon the partnership for all subsequent years unless the consent of the Commissioner is obtained to change the method of treating bad debts, as required by article 151 of Regulations 62, and such consent was not obtained by the partnership; and (2) the partnership is not entitled to deduct both specific bad debts and the addition to the reserve.

We may put aside the questions as to whether the method of treating bad debts in 1922 and 1923 constituted a change in the partnership's accounting practice of previous years, or a departure from any election assumed to have been made in 1921, and as to the necessity of a taxpayer seeking to change its method of treating bad debts,

obtaining the consent of the Commissioner, as required by the regulations, as a requisite to making the change. Our disposition of the case requires no consideration of these questions.

Under the provisions of section 214(a)(7), a taxpayer may, for the purposes of the tax, treat its bad debts in one of two ways. It may deduct "Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts)." The use of the word " or " clearly indicates that the deduction spoken of in the parenthetical clause is an alternative one. A taxpayer may either deduct specific bad debts, or, in lieu thereof, a reasonable addition to a reserve for bad debts. It may not deduct both specific bad debts and the addition to the reserve. *Transatlantic Clock & Watch Co.*, 3 B. T. A. 1064; *Rhode Island Hospital Trust Co.* v. *Commissioner of Internal Revenue*, 29 Fed. (2d) 339.

However, while the partnership was technically wrong in deducting both specific bad debts and the additions to the reserve, the entire amount deducted in each year may be allowed, as pointed out by the Circuit Court of Appeals in the *Rhode Island Hospital Trust Co.*, case, *supra*, if the partnership is entitled to treat its bad debts on a reserve basis and the total amount deducted meets the test of reasonableness. Assuming, without deciding, that the partnership was entitled to treat its bad debts on the reserve basis, there remained for the petitioners to prove the reasonableness of the deductions, but this they have failed to do.

There is set forth in the findings of fact the amount of bad debts charged off in each of the years 1918 to 1923, inclusive, but, without knowing what the sales in the years prior to 1922 amounted to, any prognostication as to probable losses on 1922 and 1923 accounts, based upon the ratio of bad debts to gross sales in prior years, is impossible. The auditor for the partnership testified that the amount credited to the guarantee account of each year from profit and loss was 2.5 per cent of the gross sales. Knowing the amounts credited to the guarantee account in each year, it might appear that the sales for the years prior to 1922 were possible of determination. However, when we analyze the figures for 1922 and 1923, we find that we can not rely upon the auditor's testimony in this respect. The total amounts set up in the guarantee account in 1922 and 1923 were $83,872.77 and $98,215.98, respectively. If these two sums are divided by 2.5 per cent, gross sales are indicated for those years in the respective amounts of $3,354,910 and $3,928,638. The same witness testified that the sales amounted to $3,802,204 for 1922 and $4,409,777 for 1923.

Furthermore, we have no satisfactory evidence before us as to the condition of the accounts receivable outstanding at the close of 1922 and 1923, in respect of which the additions to the bad debt reserve were made, or as to the probability of losses on those accounts. The only evidence along that line is the statement of the auditor that following the depression in 1921, in which year the partnership carried on a large export business, it was found necessary to charge off a large number of foreign accounts, and that other foreign accounts still remained on the books at the close of 1922, as to which there was some question of ultimate collection in the minds of the partners. We do not know what the total of these accounts still outstanding in 1922 amounted to.

The evidence before us does not prove the reasonableness of the deductions claimed, or that the partnership is entitled to any greater deductions for bad debts than those allowed by the Commissioner.

The only other point in the case is whether, if we hold against the petitioners on the bad debts question, the resulting increase in partnership income should be reduced by distributions to employees before determining the distributive shares of the partners. The contracts in evidence disclose that three employees were each entitled to receive a specified percentage of the " net profits " the determination of which was hedged with very general limitations. Obviously the net profits of the firm as referred to in the contracts are not the same as net income under the taxing act, and so while our decision on the principal issue results in an increase of net income over the amount reported, it may or may not be that the employees are entitled to receive any additional sums from such increase.

*Judgment will be entered for the respondent.*